IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THOMAS E. HOPE                                                    PLAINTIFF


vs.                          CASE NO. **4:04CV01129GH**


ANTHONY J. PRINICIPI, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS                          DEFENDANT

## ORDER

Plaintiff filed this action *pro se* alleging that defendant discriminated and
retaliated against him when he was not selected for three different nursing assistant
positions with the Veterans Administration Medical Center (VAMC) . Defendant has
filed a motion for partial dismissal contending that (1) the Americans with Disability
Act (ADA) does not apply to federal employees and plaintiff's discrimination claim
under the Rehabilitation Act must be dismissed for failure to exhaust administrative
remedies; (2) plaintiff's allegations of age discrimination must be dismissed for failure
to exhaust; and (3) plaintiff's claim for compensatory damages must be dismissed for
failure to exhaust administrative remedies.

Plaintiff, through appointed counsel, has responded. He agrees that the ADA
does not apply to federal employees and that he has not stated a claim for age
discrimination. He disagrees that he is barred from pursuing his disability
discrimination claim and from seeking compensatory damages.

A brief summary of the facts of the case is necessary before proceeding to the
merits. Plaintiff sought a transfer from his position as a Nurse Assistant/Medical
Instrument Technician, at the VAMC in Richmond, Virginia, to a similar position at
the VAMC in Little Rock. Plaintiff applied for a Nursing Assistant position in the
Surgical Intensive Care Unit (Announcement Number 01-136) and was interviewed

-1-

for the position. On October 11, 2001, plaintiff was notified that his application was considered but he was not selected for the position.

The same position was reannounced on October 25, 2001, under Certificate No. DEU-02-006-SO and plaintiff's name was submitted. By letter dated December 6, 2001, plaintiff was informed that his application was considered but that the position would not be filled.

On February 11, 2002, the Little Rock VAMC issued Announcement Number DEU-02-033-SO for ten nursing assistants. Plaintiff applied, was found eligible and was referred for consideration. In April or May 2002, plaintiff was selected and offered a Nursing Assistant position pending satisfactory completion of a physical examination. On May 16, 2002, a physical examination concluded that plaintiff could perform the duties of a Nursing Assistant without limiting conditions but noted that he had a history of knee and back pain and injury. The examining physician stated that plaintiff must use good body mechanics when lifting. On May 21, 2002, another physician completed plaintiff's duty status report and stated that plaintiff could only work 8 hours per day, could not lift, push or pull over 25 pounds, was to avoid prolonged standing or walking that causes knee or lower back pain, and was to adhere strictly to his modified duties.

On May 23, 2002, the Nursing Service notified the Human Resources Management Service (HRMS) that based on plaintiff's preemployment physical plaintiff had limitations that it could not accommodate. Therefore, on May 24, 2002, Daniel Peterson, Chief of HRMS, notified plaintiff that the VAMC had sent an objection of plaintiff's suitability for employment as a Nursing Assistant to the Office of Personnel Management (OPM). The objection stated that plaintiff was not able to perform the functional duties of a Nursing Assistant position due to his inability to lift, push, pull or stand for prolonged periods, without risk of harm to himself or patients. The objection stated that no accommodation could be made, and requested

that plaintiff's name be removed from OPM's list of 30% disabled veterans eligible for Nursing Assistant positions. On July 17, 2002, OPM approved the agency's request to remove plaintiff from eligibility as a Nursing Assistant.

Plaintiff filed a formal administrative EEO complaint on February 21, 2002. The formal complaint does not contain a checklist like that used in the private sector; rather a complainant is asked to state the basis for the discrimination. Plaintiff indicated reprisal and failure to hire. (Exhibit 1 to Defendant's motion for partial dismissal). The agency accepted the complaint and identified the following issue for investigation: was plaintiff discriminated against based on reprisal (for prior EEO activity) when he was not hired on October 11, 2001, and December 6, 2001, for the Nursing Assistant positions? (Exhibit 2 to Defendant's Motion for Partial Dismissal)

On July 25, 2002, plaintiff wrote to Joan Hanson, Chief, Policy & Compliance, contending that Peterson "was a dupe.. ." He further stated in the letter that ."Mr. Peterson is denying a 30% service connected veteran a job at the VA Hospital. A U.S. Department of Labor Duty Status Report: Employee advised to resume work with accommodation. The occup. specialist in ORM stated he would not file this duty status with U.S. Department of Labor even though I presented my OWCP file number. I am eligible for reinstatement, with veteran preference. Is there something you could do to help this service connected veteran with this matter. I believe this is a continuation of race discrimination and denial of benefits and fair employment. " (Exhibit 3 to Defendant's motion for partial dismissal).

The agency accepted the letter of July 25th as an amendment to the original complaint of discrimination dated February 26, 2002. (Exhibit 4 to defendant's motion for partial dismissal). The agency found that the new allegation, which alleged that management in an attempt to deny him employment, had posed on objection on plaintiff's suitability for employment as a Nursing Assistant, was like or related to his original claim, failure to hire, and could have reasonably grown out of his original

complaint. The claims identified and accepted by the agency for investigation were: (1) Was plaintiff discriminated against based on Reprisal (for prior EEO activity),when he was not hired for the position of Nursing Assistant on October 11, 2001 and December 6, 2001, and (2) was he discriminated against on the basis of Race (Black) when the agency posed an objection on his suitability for employment as a Nursing Assistant? [1]

A Final Agency Decision (FAD) was issued on July 17, 2003, finding that the agency did not discriminate with respect to the allegations in the complaint. (originally included as exhibit to complaint; included as defendant's exhibit 1 to defendant's reply to plaintiff's response to the motion for partial dismissal). Of note is an entire page in the FAD devoted to a discussion of disability discrimination. The agency stated that plaintiff had not alleged disability discrimination, but went on to state that if plaintiff were disabled or perceived as disabled, the agency's actions would be found to be discriminatory. An analysis for this conclusion follows in the FAD.

Plaintiff appealed the decision to the Equal Employment Opportunity Commission (EEOC), which affirmed the FAD on July 15, 2004. Plaintiff filed a Request for Reconsideration before the EEOC which was denied on August 31, 2004. (attached as exhibits to plaintiff's complaint). Plaintiff subsequently filed a complaint in federal court on October 4, 2004.

Defendant contends that plaintiff cannot pursue a disability discrimination

---

[1]The September 30, 2002, letter to plaintiff accepting the amendment is confusing. It states that plaintiff in his original EEO complaint alleged discrimination on the basis of age. The September 30th letter then states "[b]ased on the information presented in your original complaint, it was concluded that the actual claim in your age based complaint of discrimination was Failure to Hire." (emphasis added). The rest of the letter then correctly refers to the issues identified in the May 21st agency letter.

The Court has reviewed the record of the administrative proceedings and is unable to find that plaintiff has alleged, or even implied, age discrimination. The formal EEO charge doesn't even contain plaintiff's date of birth, which was included by the agency in its September 30, 2002, letter.

claim in his federal lawsuit because he did not raise the issue in his formal EEO complaint.

A federal employee asserting a discrimination claim must exhaust his or her administrative remedies as a precondition to filing an action in federal district court. *McAdams v. Reno*, 64 F. 3d 1137, 1141 (8th Cir.1995). An exception to the exhaustion requirement may be made if the allegations contained in the complaint are like or reasonably related to charges brought in the administrative charges.

"The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." *E.E.O.C. v. Delight Wholesale Co.,* 973 F.2d 664, 668 (8th Cir. 1992). The administrative complaint is to be construed liberally and plaintiff "'may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.' The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination. " *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000)(citations omitted).

Although the agency identified only race and reprisal as the bases for discrimination, the agency, during its investigation, raised concerns of disability discrimination. After a very thorough discussion of the law regarding disability discrimination, and applying the law to the facts of the charge, the FAD found that the agency had erred in evaluating plaintiff's fitness for duty, although it was not based on race or prior EEO activity.

The agency, in this instance, defined the issues.[2] It limited those allegations

---

[2]The administrative complaint did not contain a checklist for plaintiff to identify the bases for the discriminatory conduct, thereby leaving it to the agency to interpret plaintiff's allegations.

to race and reprisal, although a fair reading of the plaintiff's pro se assertions could include disability discrimination. The circumstances surrounding the failure to hire plaintiff for one of the nursing assistant positions announced in February 2002 were investigated by the agency. In its investigation, disability discrimination was addressed by the agency. Defendant was on notice of the possibility of disability discrimination allegations. The disability claim is like or is reasonably related to the substance of the administrative complaint as accepted and investigated by the agency. Thus, the Court finds that the plaintiff's disability claim under the Rehabilitation Act should not be dismissed.

Defendant also contends that plaintiff's claim for compensatory damages should be dismissed for failure to exhaust administrative remedies. This contention is without merit.

Here, the failure to raise compensatory damages in the administrative process would have had no effect on the administrative process. Defendant had found that plaintiff had not been discriminated against, therefore there would have been no need for defendant to obtain any additional information relevant to plaintiff's claim for compensatory damages. *cf. Crawford v. Babbitt*, 186 F. 3d 1322 (11th Cir. 1999), (plaintiff failed to exhaust administrate remedies when failed to respond to agency's request for information regarding her claim for compensatory damages where agency had found plaintiff was subjected to sexual harassment and retaliation). In this case, the agency did not need any information substantiating plaintiff's claim for compensatory damages because it was not going to either settle with plaintiff or find in favor of plaintiff. The agency was not going to investigate any claim for compensatory damages, thus, the rationale for exhaustion, that is to investigate and

---

Plaintiff was informed on a number of occasions as to the claims the agency would investigate and the need to inform the agency of an "improperly formulated claim." Plaintiff was, however, proceeding pro se ,and it is unclear whether plaintiff was ever informed of the possibility of alleging disability discrimination.

conciliate, has no relevance in this instance. Furthermore, the Court will not read the administrative charge as narrowly as proposed by defendant. While plaintiff was seeking back pay, he also stated that he was "shocked at race relations" which should have provided notice to defendant that plaintiff might be seeking additional damages. Additionally, nowhere is plaintiff advised that he must set forth a claim specifically for compensatory damages. *See Seay v. Tennessee Valley Authority*, 340 F. Supp. 2d 884, 849 (E. D. Tenn. 2004) (noting that nothing in EEOC complaint forms and accompanying instructions advised pro se plaintiff that he had to explicitly assert claim for emotional or mental injury which would help explain why plaintiff did not make such a specific demand).

In sum, the Court finds that plaintiff's claim for compensatory damages should not be dismissed for failure to exhaust.

Accordingly, the motion for partial dismissal is hereby denied.

IT IS SO ORDERED this 18th day of July, 2005.

UNITED STATES DISTRICT JUDGE