IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THOMAS E. HOPE                                                          PLAINTIFF


vs.                               CASE NO. **4:04CV01129GH**


ANTHONY J. PRINICIPI, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS                                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

Plaintiff initially filed this action *pro se* alleging that defendant discriminated and retaliated against him when he was not selected for three different nursing assistant positions with the Veterans Administration Medical Center (VA) in Little Rock, Arkansas. On February 10, 2006, the Court granted in part defendant's motion for summary judgment, dismissing plaintiff's race discrimination claim and his retaliation claim on the first nursing position.  On December 11, and 12, 2006 a bench trial was held on plaintiff's remaining claims, that is,  whether the VA denied plaintiff two nursing assistant positions in retaliation for plaintiff's prior EEO activity and whether plaintiff was denied the third position because of discrimination on the basis of disability.

Plaintiff is African-American. He  worked for the VA in Little Rock, Arkansas as an orthopedic nursing assistant from 1985 to 1988.  Thereafter, plaintiff worked briefly for the United States Postal Service.  He was terminated for falsifying documents because he did not tell the Postal Service about his back injury.

Plaintiff went to work at the VA in Richmond, Virginia in 1995 as a Nursing Assistant and Monitor Technician.   He filed an EEO complaint because he was having trouble with a ward clerk.  The EEO complaint was settled on November 9, 2001.  Plaintiff received monetary compensation and agreed to resign and withdraw his EEO complaint. As part of the Settlement Agreement, the agency provided letters of recommendation from

two of plaintiff's supervisors.  The agency also agreed to remove any negative documents from plaintiff's official personnel file.

From August 31, 2001 to September 28, 2001 plaintiff was on sick leave.  He was on annual leave from October 1, 2001 through October 26, 2001.  During that period of time he sought employment with the Little Rock VA.

Plaintiff applied for two GS-5 Nursing Assistant positions, vacancy announcements 01-26 and DEU 02-006-S0.  Nancy Bishop, the Nurse Manager at the surgical intensive care unit (SICU),  interviewed plaintiff for the first position.  On October 11, 2001, plaintiff was notified that his application for position 01-26 was considered but he was not selected for the position.[1]  Bishop stated that she did not chose plaintiff because he was on extended sick leave.  She admitted that he was qualified for the position and that she had received a good recommendation from plaintiff's previous supervisor.  Bishop stated that if plaintiff could show good attendance for at least six months elsewhere, she would possibly consider him for a position at a future date.   No one was selected for the position.

The same position was reannounced on October 25, 2001, under Certificate No. DEU-02-006-SO and plaintiff applied.[2]  Bishop had already interviewed plaintiff, so she did not interview him again for the position.    Plaintiff was ranked among the top three applicants.  Bishop testified that she did not select plaintiff for the second position, because he had been on extended sick leave and she thought plaintiff's leave usage was excessive.  Bishop explained that she had a great need for a nursing assistant and that she needed to hire someone she knew would come to work and do the job.  Bishop did not select anyone for the position. Her decision not to select plaintiff was approved by her direct supervisor, the Associate Chief of Nursing and by the Chief of Nursing Michael

---

[1]Sometimes referred to as the first position.  Plaintiff's race and retaliation claims with regard to this position were dismissed.

[2]Sometimes referred to as the second position.

Berube.  Bishop stated that she did not know anything about plaintiff's prior EEO complaint at the time she did not select him.  By letter dated December 6, 2001, plaintiff was informed that his application was considered but that the position would not be filled.

On February 11, 2002, the VA issued Announcement Number DEU-02-033-SO for ten GS-4 nursing assistants.[3]   According to the vacancy announcement, the work required "frequent bending, stopping, walking, standing, working in cramped positions and climbing, as well as lifting and moving heavy items." [4]All applicants for the Nursing Assistant position had to pass a pre-employment physical before being hired.  Plaintiff applied, was found eligible and was referred for consideration.  In April or May 2002, plaintiff was selected and offered a Nursing Assistant position pending satisfactory completion of a physical examination.

According to Paul Brown, an Advance Practice Nurse and Manager of the Employee Health Unit, the Human Resources Department refers a candidate to the Employee Health Unit for a pre-placement examination.  The results of the examination are compiled and sent back to Human Resources. The Employee Health Unit determines whether a candidate qualifies for the position or requires special considerations or a modification of the position description to fit the candidate's physical capacity.

Around May 16, 2002, plaintiff was given a pre-employment physical. This examination was conducted by Janet Fisher, a registered nurse.  The examiner noted that plaintiff had a 40% service connected disability, and that he has been working as a nursing assistant since his back injury about 20 years previously.  The examiner also noted that plaintiff works out and exercises daily, and that he knows and uses good body mechanics.[5]

The Certificate of Medical Examination stated that the nursing assistant job had the

---

[3] Sometimes referred to as the third position.

[4]Plaintiff's Exhibit 3.

[5]Plaintiff's Exhibit 1.

following relevant functional requirements: heavy lifting, 45 pounds or over; moderate carrying, 15-44 pounds; pushing; reaching above shoulders;  walking (8 hours); and standing (8 hours). [6]  The examiner concluded that there were no conditions that would limit plaintiff's performance of the job duties and/or would make him a hazard to himself or others, other than that plaintiff must use good body mechanics when lifting.   The agency medical officer recommended that plaintiff be hired or retained subject to plaintiff's duty status report that plaintiff could only work 8 hours per day, could not lift, push or pull over 25 pounds, was to avoid prolonged standing or walking that causes knee or lower back pain, and was to adhere strictly to his modified duties.  The examiner found plaintiff to be stable as long as he uses good lifting techniques.

Diann Dees, Human Resources Management Specialist, testified that when she received plaintiff's first pre-employment examination, she had concerns about plaintiff's ability to perform the Nursing Assistant functions because of plaintiff's history of knee and back problems.  She asked for clarification from the Employee Health Unit.  Plaintiff was sent back to the Employee Health Unit for a second physical.

Plaintiff had a second physical examination on May 21, 2002.   Paul Brown, an Advance Practice Nurse, testified that he conducted the second examination.  An Advance Practice Nurse is one who has a nursing degree and a master's degree.  Brown's specialty is primary care, and he testified that he has conducted over 3,000 pre-employment physicals in the last 8 years.

Brown testified that he did an individual assessment of plaintiff. Brown stated that his job was to ensure safety for plaintiff, his co-workers and patients.   Brown stated that he and plaintiff came up with a list of limitations that were listed on the CA-17, the Duty Status Report.   The CA-17 reflects that plaintiff was able to do the work subject to certain restrictions: an 8 hour work day, no lifting, pushing or pulling in excess of 25 pounds, avoid prolonged standing, walking that precipitates bilateral knee pain or lower back pain and

---

[6]Defendant's Exhibit 12.

strict adherence to modified duty.   Plaintiff denies that he agreed with the restrictions on CA-17.   However, he failed to submit additional information in support of his position as he was told he could do.  The record reflects that Dr. Watkins talked to plaintiff about the CA-17 and that plaintiff agreed with the suggested accommodations. [7]   The final recommendation of the Employee Health Unit was that plaintiff be hired as a Nursing Assistant with the restrictions noted on the CA-17.

Dees stated that upon receiving the CA-17 she sent a letter to the  Nursing Service to ask if it could find a position for plaintiff where he would not have to stand, walk and carry heavy objects.   Michael Berube, Chief of the Nursing Service,  testified that he tried to find work within Nursing Services to fit within plaintiff's limitations, but was not able to do so. By memo dated May 23, 2002,  Berube advised Human Resources that the Nursing Service did not have any position available to accommodate plaintiff.[8]  Berube and Daniel Peterson, Chief of Human Resources,  testified that if work had been found to meet plaintiff's limitations, plaintiff would have been hired

In a letter dated  May 24th [9],  Dees  advised  plaintiff that the Human Resources Department had forwarded an objection for suitability to the Office of Personnel Management ("OPM") on his employment for Nursing Assistant.   Dees testified that she alone made the decision to submit an objection to suitability.  She stated that she had received training on objections to suitability and that she was the one certified by OPM to do them.  She said she relied on the information in the physical in making her decision. She further stated that before making the objection she advised plaintiff that he could bring in any medical information to support his position.

Plaintiff was further informed that he could provide any information in support of his

_____

[7]Defendant's Exhibit 12.

[8]Defendant's Exhibit 13.

[9]The letter erroneously states the date as May 24, 2001, instead of May 24, 2002. *See* Plaintiff's Ex. 9.

case to OPM. [10]   Plaintiff did not send any information.

OPM is an independent agency.  Personnel with a  medical background conduct an independent review of the suitability.  OPM sustained the objection . [11]  OPM notified plaintiff by letter dated July 18, 2002, that after reviewing the medical documentation and related materials it concluded that plaintiff's "medical condition presents an unacceptable safety and health risk and is likely to adversely affect [his] ability to perform the full range of duties required by the position." [12]

Plaintiff filed a formal administrative EEO complaint on February 21, 2002. The complaint was amended by letter in July, 2002, to include the agency's objection to suitability made to OPM.   A Final Agency Decision (FAD) was issued on July 17, 2003, finding that the agency did not discriminate with respect to the allegations in the complaint. Plaintiff appealed the decision to the Equal Employment Opportunity Commission (EEOC), which affirmed the FAD on July 15, 2004.  Plaintiff filed a Request for Reconsideration before the EEOC which was denied on August 31, 2004. [13]  Plaintiff subsequently filed a complaint in federal court on October 4, 2004 and counsel was appointed for him.


Retaliation

To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action.  *Kasper v. Federated Mut. Ins. Co.,*  425 F.3d 496, 502 (8th Cir. 2005).  If plaintiff succeeds in proving a prima facie case of retaliation, the burden shifts to defendant to articulate a legitimate

---

[10]Defendant's Exhibit 14.

[11]Plaintiff's Exhibit 10.

[12]Defendant's Exhibit 15.

[13]Attached as exhibits to plaintiff's complaint.

nondiscriminatory reason for its action.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981).  Plaintiff must then prove by a preponderance of evidence that the articulated reason is a pretext for discrimination or retaliation.  Plaintiff must show both that the reason is false and that discrimination or retaliation was the real reason.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Plaintiff filed an EEO complaint while employed at the Richmond, Virginia VA.  That case was settled in November, 2001.  With regard to the second position, the evidence is unrefuted that Bishop, who was the decision maker with regard to that decision, had no knowledge of the prior EEO complaint.  Furthermore, at the time of the decision, Berube did not know of the EEO complaint in Richmond.   Therefore, plaintiff has failed to establish a prima facie case of retaliation with regard to the second position.

By the time of the third position, there is no doubt that certain persons at the VA knew of the Richmond EEO complaint.   Berube testified that Peterson had reminded Berube of an incident involving plaintiff when plaintiff work at the VA in Little Rock in the 1980's.  According to Peterson and Berube, plaintiff was involved in a heated verbal exchange with Peterson.  Based on this reminder, Berube rechecked plaintiff's references in Richmond.  He stated that he had received satisfactory references and that he also learned of plaintiff's EEO activity.

However, the knowledge of the prior EEO activity is not causally connected to plaintiff's non-selection for the GS-4 nursing position. The decisions concerning plaintiff's non-selection were made by persons with no knowledge of the EEO activity.  The pre-employment physical is a requirement for the position.  All candidates had to take the physical.   The recommendation  of certain restrictions or modifications was made by the Employee Health Unit.  There is no evidence that Fisher, Brown or Watson had any knowledge of the prior EEO activity or that plaintiff was treated differently than any other candidate.  Brown testified that it is not unusual for a candidate to be required to take a second examination.

Berube tried to find a position for plaintiff with the restrictions recommended by the Employee Health Unit. None of the nursing supervisors had a position for plaintiff and there is no evidence that any of those supervisors knew of the EEO complaint. [14]

Berube said the information had no effect on the non-selection of plaintiff. He wanted to give plaintiff a chance to be employed. Plaintiff had no reason to believe that Berube was retaliatory; in fact he testified that he had no problems with Berube. Plaintiff pointed to Peterson as the culprit, the person with the retaliatory animus.

Peterson, however, had no input into the pre-employment examination of plaintiff or the restrictions placed on plaintiff. The requirements for the position come from Nursing Services. He had no role in Berube's attempt to find work for plaintiff within his restrictions or in Dee's objection to suitability. The decision that plaintiff was not suitable for a nursing assistant position was made by an independent agency, OPM.

The Court finds that plaintiff has failed to establish a prima facie case of retaliation with regard to the GS-4 position. Even assuming that he did, the Court finds that defendant has articulated a legitimate, nondiscriminatory reason and plaintiff has failed to present any evidence that the reason is pretextual. Thus, plaintiff's claims of retaliation must fail.

Disability Discrimination

Plaintiff's disability discrimination claim is brought under the Rehabilitation Act. 29 U.S.C. § 794(a). [15] Disability discrimination claims for federal employees are covered by the Rehabilitation Act. To establish a prima facie case of discrimination based on disability, plaintiff must show that (1) he is  has a disability, (2) that he was qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) that he

---

[14]The sheet sent around seeking work for plaintiff did not have his name on it.

[15]. The Americans with Disabilities Act ("ADA") does not cover federal employment claims. 42 U.S.C. § 12111(5)(b). The analysis under the ADA is the same as under the Rehabilitation Act, and cases interpreting the two have been found to be interchangeable. *Allison v. Dep't of Corr.*, 94 F. 3d 494, 497 (8th Cir. 1996).

suffered an adverse employment action because of his disability. *Conant v. City of Hibbing*, 271 F. 3d 782, 784 (8th Cir. 2001). An individual with a disability is defined as "one who has a physical or mental impairment which substantially limits one or more of such person's major activities." 29 C. F. R. § 1614.203(a)(1)(I). Major life activities are defined as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C. F. R. § 1630.2(a).

Plaintiff cannot establish that he is a disabled individual within the meaning of the Act. He testified that he is not disabled and that he was not limited in any major life activities. While plaintiff cannot perform the functional duties of the particular Nursing Assistant position at issue, plaintiff can perform other work.

Furthermore there is no evidence that defendant regarded plaintiff as disabled. Defense witnesses testified that they would have hired plaintiff if they could find work for him within his restrictions. There is a distinction between "being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as 'disabled' within the meaning of the ADA." *Conant v. City of Hibbing*, 271 F. 3d 782, 785 (8th Cir. 2001). A number of witnesses testified that they did not consider plaintiff disabled. Dees testified that plaintiff was not denied employment but was just denied employment as a nursing assistant. She told plaintiff to try to qualify for other positions at the VA. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Robinson v. Neodata Svces. Inc.*, 94 F. 3d 499, 501 (8th Cir. 1996) (citations omitted). Plaintiff must show that he is limited in performing "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' 29 C. F. R. § 1630.2(j)(3)(1). That is, plaintiff must show that he is limited in a broad range of similar jobs. He has failed to do so.

In sum, the Court find that plaintiff has failed to establish that defendant discriminated against him on the basis of disability or that defendant took retaliatory action against him.

His complaint is therefore dismissed with prejudice.  Judgment will be entered accordingly.[16]

IT IS SO ORDERED this 8th  day of February, 2007.

_George Howard, Jr._
UNITED STATES DISTRICT JUDGE

---

[16]The Court thanks appointed counsel for his diligent representation of plaintiff.

-10-